### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARK J. KOTAPKA, M.D.,** | : | |
| **Plaintiff,** : | | **CIVIL ACTION** |
| | : | **No.** |
| **v.** | : | |
| | : | |
| **JEFFERSON MEDICAL GROUP,** | : | |
| **and** | : | **JURY TRIAL DEMANDED** |
| **EINSTEIN PRACTICE PLAN, INC.,** | : | |
| **Defendants.** | | |

## C O M P L A I N T

1.     Like other employees, physicians are protected by federal and state laws that prohibit employers from making age-related decisions that cost them the loss of their jobs.  The 1967 Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA") and the 1955 Pennsylvania Human Relations Act, 43 Pa.C.S.A. § 931, *et seq.* ("PHRA") provide remedies for those losses.

2.     Both statutes recognize that chronological age is not an indicator of competency and should not be used to drive older workers out of the labor market.  *See, e.g.*, *Western Air Lines, Inc. v. Criswell*, 472 U.S. 400, 422 (1985) (Under the ADEA, "employers are to evaluate employees . . . on their merits and not their age").

3.     Despite these constraints, employers sometimes exceed the permissible and, because of their age, cause older employees to suffer not just a loss of employment, but, as the Supreme Court has said,  "a devastating effect [to] the[ir] dignity." *Criswell*, 472 U.S. at 400.

4.      Physicians, also like other employees, are not immune from these injuries Indeed, just last year, the American Medical Association issued a Report on the effect ageism has on older physicians.  American Medical Association, *Experiences of Ageism Among Senior Physicians:  A Qualitative Study* (May 12, 2025),  https://www.ama-assn.org/system/files/senior-physician-ageism-report.pdf  (citing the loss  "of their livelihood and well-being,"  *id*. at 6, and "feelings of isolation and loneliness,"  *id*. at 19, brought on by ageist acts against physicians).

5.      This is such a case.

6.      Here, despite a rewarding and successful career as a neurosurgeon, Dr. Mark Kotapka's contract was  "non-renewed"  by the Jefferson Medical Group and Einstein Practice Plan, Inc. -- an ageist decision they made when he was 69 years old.

7.      That decision had nothing to do with Dr. Kotapka's competence, skills, or leadership ability.  Nor did it have anything to do with a need to reduce their workforce. Rather, defendants fired him after they hired five new neurosurgeons, each of whom is under 40 years old and none of whom had the career-developed skills and abilities he had.

8.      To cover up its decision, defendants portrayed Dr. Kotapka as having retired -- which he did not.  Nor was that all.  Even before they terminated him, defendants encouraged Dr. Kotapka to give his cases to his younger, newly-hired colleagues, and then failed to provide him with the staff he needed to perform his own administrative duties.

9.     Below, at ¶¶ 19-40, we set out in more detail the facts giving rise to Dr. Kotapka's claims of age discrimination against the defendants.

## JURISDICTION

10.     The Court has subject matter jurisdiction over plaintiff's ADEA claims pursuant to 29 U.S.C. § 626(c)(1).

11.     The Court has supplemental jurisdiction over plaintiff's PHRA claims pursuant to 28 U.S.C. § 1367(a).

12.     The Court has personal jurisdiction over the parties since (a) plaintiff Kotapka resides and works in this judicial district, (b) defendants regularly conduct business here; and (c) it was here that defendants non-renewed plaintiff's employment contract.

## VENUE

13.     Venue over plaintiff's ADEA and PHRA claims is properly laid in this judicial district pursuant to the provisions of 28 U.S.C. §§ 1391(b) and (c).

## PARTIES

14.     Plaintiff, Dr. Mark J. Kotapka, is an acclaimed neurosurgeon who, for many years, has been treating patients with benign and malignant tumors of the brain, cerebral aneurysms, traumatic brain injuries, and other neurological conditions.  Since 1997, he has been Board certified by the American Board of Neurological Surgeons.  He resides at 1025 Millbrook Road, Berwyn, Pennsylvania 19312.

15.     Defendant Jefferson Medical Group ("JMG"), acting by and through the Einstein Practice Plan, Inc. ("Einstein"), is a non-profit corporation that provides physician services to patients as part of the broader Jefferson University Health System. JMG and Einstein maintain corporate offices at 1100 Market Street, 19th Floor, Philadelphia, Pennsylvania 19107.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

16.     On October 22, 2025, Dr. Kotapka timely filed a charge of age discrimination against JMG and Einstein with the Philadelphia office of the United States Equal Employment Opportunity Commission ("EEOC"). The charge was docketed by the EEOC at No. 530-2026-00568.

17.     That charge was dual filed with the Pennsylvania Human Relations Commission ("PHRC") which docketed it as PHRC Case No. 202503417.

18.     This lawsuit has been filed in accordance with the suit-filing provisions of both the ADEA and PHRA.

## ADDITIONAL FACTS

19.     In 1985 Dr. Kotapka earned his medical degree from the University of Maryland School of Medicine. He completed his internship in General Surgery and a residency in Neurosurgery from the Hospital of the University of Pennsylvania ("HUP") in 1991. Three fellowships followed: the first in Neuropathology from Southern General Hospital in Glasgow, Scotland; the second in Pediatric Neurosurgery at the Children's

Hospital in Philadelphia; and the third in Cranial Base Surgery at the University of Pittsburgh Hospital.

20. Following those fellowships, Dr. Kotapka was employed as an attending neurosurgeon at HUP. After that, he was the Vice Chair of the Department of Neurosurgery and Co-Director of the Center for Cranial Base Surgery and the Pituitary Tumor Program at HUP.

21. In 2000, Dr. Kotapka joined the Einstein Healthcare Network as its Division Chair of Neurosurgery. He continued in that capacity when, in October 2021, the Jefferson Health System acquired the Einstein Healthcare Network.

22. In March 2025, Dr. Kotapka was appointed as Chair of the Department of Neuroscience for the Jefferson Health System's hospitals in Philadelphia and Montgomery Counties.

23. Over his forty-year career, Dr. Kotapka has received praise and compliments by his peers, patients and hospital administrators. For many years he also had been rated as a top neurological surgeon in the United States by Castle Connolly America and by *Philadelphia* Magazine as among the best physicians in the Philadelphia region.

24. Age has not diminished Dr. Kotapka's skills, abilities, and the quality of care he provides to his patients.

25. Nor has he ever been placed on a performance improvement plan, warned about the quantity of his surgeries, or otherwise faced any disciplinary action by JMG, Einstein or any other of his employers.

5

26. Notwithstanding Dr. Kotapka's sustained stellar performance, defendants JMG and Einstein have taken steps to reduce his salary, duties and responsibilities and, ultimately, to terminate his employment as of June 30, 2026. They have done so on account of his age -- he is now 70 years old -- including the preferences they have shown to his much younger peers.

27. These ageist actions began in 2025 when Dr. Kotapka was 69 years old.

28. In March 2025, defendants JMG and Einstein reduced Dr. Kotapka's pay -- a decision that resulted in the loss of more than $400,000 annually in his base salary.

29. In May 2025, they eliminated all his night calls and duties -- which cost Dr. Kotapka an additional loss of approximately $200,000 annually.

30. Defendants did not take similar adverse actions (as those set out in ¶¶ 28-29) against any other neurosurgeon.

31. In fact, while reducing Dr. Kotapka's pay and duties, defendants added five new neurosurgeons to their practice. None of them is Board certified by the American Board of Neurological Surgery.

32. All five are under 40 years old and none of them has the years of experience and skills as does Dr. Kotapka.

33. Also, in the summer of 2025, defendants JMG and Einstein promoted a sixth neurosurgeon to the position of Division Chair of Neurosurgery -- the position Dr. Kotapka previously had held. That physician is approximately 15 years younger than Dr. Kotapka and lacks his years of leadership, experience, and qualifications.

34.     To increase the volume of patient cases assigned to his much younger, newly-hired colleagues, defendants JMG and Einstein urged Dr. Kotapka to give them cases he would ordinarily take.

35.     The result of these actions had the intended effect of reducing the volume of patient cases assigned to Dr. Kotapka -- since the volume of overall cases in defendants' neurosurgery department remained relatively constant over the years and did not change following the employment of the five new neurosurgeons by defendants.

36.     Despite assigning Dr. Kotapka in March 2025 as Department Chair of Neuroscience, defendants failed to provide him with the administrative assistance he needed to perform those job duties.

37.     In September 2025, defendant notified Dr. Kotapka that his Employment Agreement would not be renewed.  As a result, his employment and staff privileges will come to an end on June 30, 2026.

38.     Dr. Kotapka was the *only* neurosurgeon terminated by defendants at that time.  No other surgeon was shown the door or had his or her pay or duties reduced as he was.  Indeed, the patients that overwise would have been treated by Dr. Kotapka are now being seen or will be treated by the much younger neurosurgeons who were recently hired by defendants.

39.     When Dr. Kotapka was informed that his contract would not be renewed, he was told that defendants would treat and publicly announce the decision as a "retirement."

40.     That was pretextual.  Dr. Kotapka had and has no interest in retirement -- a fact well known by the defendants.

## CLAIMS FOR RELIEF

## COUNT I:
## <u>DEFENDANTS' VIOLATION OF THE ADEA</u>

41.     Dr. Kotapka repeats and incorporates by reference the allegations set out in paragraphs 1 through 40 of his Complaint.

42.     By engaging in a series of adverse employment actions leading to and including their decision to terminate Dr. Kotapka's employment as of June 30, 2026, defendants JMG and Einstein have discriminated against him in violation of his rights under the ADEA, 29 U.S.C. § 623(a)(1).

43.     As a direct and proximate result of defendants' violation of those rights, Dr. Kotapka has suffered and will continue to suffer a loss of earnings and earning capacity including, but not limited to, a loss of wages, employee benefits, medical liability insurance coverage and staff privileges.

44.     Defendants' adverse actions against Dr. Kotapka were taken in willful and reckless disregard of the rights guaranteed him by the ADEA.

## COUNT II:
## DEFENDANTS' VIOLATION OF THE PHRA

45.    Dr. Kotapka repeats and incorporates by reference the allegations set out in paragraphs 1 through 44 of his Complaint.

46.    By engaging in a series of adverse actions leading to and including their decision to terminate Dr. Kotapka's services as of June 30, 2026, defendants JMG and Einstein have discriminated against him in violation of his rights under the PHRA, 43 Pa.C.S.A. § 955(a).

47.    As a direct and proximate result of defendants' violation of those rights, Dr. Kotapka has suffered and will continue to suffer a loss of earnings and earning capacity including, but not limited to, a loss of wages, employee benefits, medical liability insurance coverage, and staff privileges.

48.    As a further direct and proximate result of defendants' violation of his rights under the PHRA, Dr. Kotapka has suffered physical pain and suffering, harm to his reputation, humiliation, embarrassment and loss of self-esteem.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mark J. Kotapka, M.D. respectfully requests the Court to enter judgment in his favor and against Defendants Jefferson Medical Group and Einstein Practice Group, Inc., and to include in it the following relief:

a.    An award of back pay;

b.      An award of front pay to the extent reinstatement is not

feasible;

c.      An award of liquidated damages as authorized by the ADEA;

d.      An award of non-economic compensatory damages as

authorized by the PHRA;

e.      An award of reasonable counsel fees and costs; and

f.      Such other legal and equitable relief as may be just and

proper under the circumstances.

## JURY TRIAL DEMANDED

Plaintiff Mark J. Kotapka, M.D. demands a jury trial on all the legal claims set

forth in his Complaint.

RAYNES & LAWN

By: _____

Harold I. Goodman, Esquire
2400 Market Street
Suite 317
Philadelphia, PA  19103
215-568-6190

Attorneys for Plaintiff Mark J. Kotapka, M.D.

Dated:    April 29, 2026

10